IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MACK ACOSTA,

        Plaintiff,

v.                                          CIV 05-0537 LAM

JO ANNE B. BARNHART,
Commissioner, Social Security Administration,

        Defendant.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision* (*Doc. 9*) filed on November 14, 2005. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 10*), Defendant's response to the motion (*Doc. 11*), Plaintiff's reply to the response (*Doc. 12*), and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **DENIED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") **AFFIRMED.**

## I. Procedural History

On October 22, 2002, Plaintiff Mack P. Acosta, protectively filed for Disability Insurance Benefits. *R. at 48, 135.* In connection with his application, he alleged a disability since August 16,

2002. *R. at 45, 135.*  In connection with his application, Plaintiff alleged a disability due to pain from high grade spondylolisthesis. *R. at 52.*  There is also some evidence in the *Record* that Plaintiff suffers from, or complains of, osteoarthritis and degenerative joint disease (*R. at 110, 114),* and abdominal problems due to a gunshot wound *(R. at 59, 73, 81, 144-145).*[1]  Plaintiff's application was denied at the initial (*R. at 29, 31-34)* and reconsideration levels (*R. at 30, 37-40).*

An administrative law judge (hereinafter "ALJ") conducted a hearing on September 20, 2004. *R. at 132-152.*  Plaintiff was present and testified at the hearing. *R. at 135-147, 151.*  Plaintiff was represented by counsel at the hearing.  *R. at 132.*  Vocational expert (hereinafter, "VE"), Bertina Telles, testified at the hearing.  *R. at 137, 147-151.*  On December 22, 2004, the ALJ issued her decision in which she found that Plaintiff was not disabled at step five of the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520.  *R. at 11-22 .*  The ALJ made the following findings, *inter alia*, with regard to Plaintiff: (1) he met the nondisability requirements for a period of disability and Disability Insurance Benefits and was insured for benefits through the date of the decision; (2) he had not engaged in substantial gainful activity since the alleged onset of disability; (3) he had a "severe" impairment pursuant to the requirements in 20 C.F.R. § 404.1521;[2] (4) this medically determinable impairment did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; (5) his allegations regarding his limitations were not totally credible; (6) he has the residual functional capacity (hereinafter "RFC") to perform a restricted range

---

[1]Plaintiff reports that in October, 1998, he received injuries to his stomach, kidney and intestines from a gunshot wound.  *R. at 59.*  Plaintiff attributes his present abdominal pain and diarrhea to this injury.  *R. at 144-145.*

[2]The ALJ found that Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine. *R. at 16, 20.*  Under relevant Social Security regulations, an impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities.  20 C.F.R. §404.1521.

of light work;[3] (7) he is unable to perform any of his past relevant work; (8) he is a "younger individual between the ages of 45 and 49"; (9) he has a high school (or high school equivalent) education; (10) his exertional limitations do not allow him to perform the full range of light work, but there are a significant number of jobs in the national economy, per vocational expert's testimony, that he could perform; and (11) he had not been under a "disability" as defined in the Social Security Act, at any time through the date of the decision. *R. at 20-21.*

After the ALJ issued her decision, Plaintiff filed a request for review. *R. at 9-10.* On March 25, 2005, the Appeals Council issued its decision denying his request and upholding the decision of the ALJ. *R. at 5-8.* On May 16, 2005, Plaintiff filed his complaint in this action. (*Doc. 1.*)

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

substitute its judgment for that of the agency.  *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118.  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214.  While the Court may not reweigh the evidence or try the issues *de novo,* its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).

For purposes of disability insurance and supplemental security income benefits, a person is considered to be disabled if he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 [twelve] months." 42 U.S.C. § 423(d)(1)(A) and 42 U.S.C. § 1382c(a)(3)(A), respectively.  A five-step sequential evaluation process has been established for evaluating a disability claim. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520 and 416.920.  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful activity; that he has a medically severe impairment or combination of impairments; and that either his impairment(s) meet or equal one of the presumptively disabling

impairments listed in the regulations under 20 C.F.R. Pt. 404, Subpt. P, App. 1,[4] or that he is unable to perform his past relevant work.  *See Grogan v. Barnhart,* 399 F.3d at 1261 (10th Cir. 2005); 20 C.F.R. § 404.1520(a)(4).  At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work, considering his RFC, age, education, and work experience.  *Id.*

## III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff was forty-nine years old on the date of the ALJ's decision.  *R. at 45.*  He completed the twelfth grade *(R. at 58, 136)* and has no other special training *(R. at 58).*  Plaintiff has past work experience working in the oil fields as a derrick man.  *R. at 53, 136-137.*

Plaintiff's relevant medical records begin with a visit to the emergency room of Artesia General Hospital on August 18, 2002 with complaints of lower back pain following a work related injury.  *R. at 97.*  Plaintiff was diagnosed with a lumbar/sacral strain, given pain medication and released.  *Id.*  On August 19, 2002, Johnny C. Moreno, M.D. noted an "[x]-ray of the back show[ed] a fairly moderate spondylolisthesis of the lumbar sacral area, at the level of L5-S1, with almost 1/3 of the vertebra overriding the sacral area of the back, consistent with a fairly high grade

---

[4]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. §§ 404.1509 and 416.909 (requiring that an impairment have lasted or be expected to last for a continuous period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 1520(d), and §§ 416.920(a)(4)(iii) and 920(d).

spondylolisthesis."[5]  *R. at 85*.  Dr. Moreno continued the medications, including Diclofenac[6], Soma[7],

and Percocet[8], and considered neurosurgical evaluation for the high grade spondlolisthesis.  *Id.*

Plaintiff returned to Dr. Moreno on September 12, 2002, with lower back pain that was now

"severe an [sic] intractable in nature."  *R. at 84.*[9]  Plaintiff was given an IM injection of Toradol[10] and

referred to Dr. Guiterrez.  *Id.*  On September 19, 2002, an ultrasound of Plaintiff's kidneys revealed

a right hepatic cyst, but was otherwise unremarkable.  *R. at 93, 124*.  On September 25, 2002,

Plaintiff was examined by Mario Gutierrez, M.D. in the emergency room at Eastern New Mexico

Medical Center and complained of "significant pain in the lower back that radiates into the right side

of the abdomen."  *R. at 81*.  Plaintiff stated that he had had pain for approximately one month that

was not improving with conservative treatment and denied any accident that could have caused the

pain.  *Id.*  Dr. Gutierrez recommended Plaintiff return to Dr. Moreno and suggested an abdominal

and pelvic CT scan to determine the etiology of his symptoms.  *R. at 82*.

On September 26, 2002, Dr. Moreno noted that Plaintiff had "normal full range of motion,

with the back appearing to be improved, with just minimal discomfort, and not currently having to

---

[5]Spondylolisthesis is the forward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum.  *Steadman's Medical Dictionary* 1678 (27th ed., Lippincott Williams & Wilkins 2000).

[6]Diclofenac is a nonsteroidal anti-inflammatory drug (NSAID) effective in treating fever, pain, and inflammation in the body.  *www.medicinenet.com*

[7]Soma (carisoprodol) is a muscle relaxant that acts by blocking electrical communication among nerves in the reticular formation of the brain and in the spinal cord.  *www.medicinenet.com*

[8]Percocet is a combination of oxycodone and acetaminophen.  Oxycodone is a narcotic analgesic and acetaminophen is a non-narcotic analgesic and antipyretic (fever reducer).  *www.medicinenet.com*

[9]Portions of the treatment notes on page 84 of the record are duplicated at page 116.  *R. at 84, 116*.

[10]Toradol (ketorolac) is a nonsteroidal anti-inflammatory drug that relieves pain and reduces swelling.  *www.medicinenet.com*

take any pain medications, aside from Advil, which he takes on an intermittent nature." *R. at 84, 116*. Dr. Moreno's assessment noted that Plaintiff's lower back pain was improved, that he had spondylolisthesis of the lower lumbar spine, a hepatic cyst, and mild liver dysfunction, consistent with alcohol use. *Id.* Plaintiff was told to abstain from alcohol use and was scheduled for a CT scan of the head for further evaluation of the lower back pain and abdominal discomfort. *Id.* An October 1, 2002 CT scan of Plaintiff's abdomen and pelvis indicated a benign hepatic cyst and was otherwise unremarkable. *R. at 92, 123.* On November 22, 2002, Plaintiff returned to Dr. Moreno complaining of "persistent lower back pain, with mild radiation into the right abdominal area and right inguinal area." *R. at 84, 115.* Dr. Moreno continued Plaintiff's medications and considered re-evaluation by Dr. Gutierrez if the pain persisted. *Id.*

On February 11, 2003 a state agency physician assessed Plaintiff's limitations on the Physical Residual Functional Capacity Assessment form. *R. at 101-108.* These findings included some exertional limitations (Plaintiff had the ability to occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and unlimited push and/or pull (including operation of hand and/or foot controls)) *(R. at 102)*, some postural limitations (Plaintiff had the ability to occasionally climb, stoop, and crouch and the ability to frequently balance, kneel and crawl) *(R. at 103)*, but had no manipulative, visual, communicative, or environmental limitations *(R. at 104-105)*. In assessing Plaintiff's exertional limitations, the agency physician noted Plaintiff was a "47 y.o. man who injured his low back in 9/02. X-rays show grade II spondylolisthesis and narrowed disc space. His exam shows normal strengths, no sign of radiculopathy, no neurological deficits. He complains of pain. Restrictions are reasonable in view

of the pain and the diagnosis." *R. at 102.*  On June 10, 2003, Plaintiff's residual functional capacity and limitations were affirmed by a second agency physician.  *R. at 108.*

On February 21, 2003, Plaintiff returned to Dr. Moreno for an evaluation of his lower back and complained of persistent lower back pain.  *R. at 110, 115.*  Dr. Moreno noted that Plaintiff had "normal full range of motion [but] with increased pain in the lumbar sacral region of the back."  *Id.* Dr. Moreno advised Plaintiff to continue taking Tylenol or Ibuprofen as needed and to rest and ice his lower back.  *Id.*  Dr. Moreno's diagnosis was chronic lower back pain secondary to spondylolisthesis, osteoarthritis and degenerative joint disease.  *Id.*  Records indicate that Plaintiff next returned to Dr. Moreno on June 30, 2003 for evaluation and follow up on chronic back pain with possible radiculopathy.[11]  *R. at 114.*  Dr. Moreno noted that Plaintiff had undergone an evaluation by neurosurgeon Dr. Guiterrez, who "felt that conservative non-surgical treatment was indicated."  *Id.* Dr. Moreno indicated that Plaintiff was to have a CT scan of the lumbar spine and take Diclofenac, Soma and Percocet if needed for severe pain.  *Id.*

On April 5, 2004, Plaintiff returned to Dr. Moreno for an evaluation of back and leg pains. *R. at 114.*  Dr. Moreno reviewed Plaintiff's medical history of osteoarthritis and degenerative joint disease with a fairly moderate spondylolisthesis of the back and noted that "[p]atient apparently not able to afford very much medication, but nontheless [sic] needing some medications to get him by." *Id.*  Plaintiff was given Lisinopril,[12] Ibuprofen, Soma and Percocet.  *Id.*  On May 28, 2004, Plaintiff

[11]Radiculopathy is a disorder of the spinal nerve roots.  *Steadman's Medical Dictionary* 1503 (27th ed., Lippincott Williams & Wilkins 2000).

[12]Lisinopril is an angiotensin converting enzyme (ACE) inhibitor.  Angiotensin narrows blood vessels and thereby maintains (elevates) blood pressure.  When the enzyme is blocked by lisinopril, angiotensin cannot be converted into its active form and blood pressure falls.  *www.medicinenet.com.*

went to Dr. Moreno with pain and swelling in his left arm but was "otherwise without any other complaints or problems." *Id.*

After the ALJ's unfavorable ruling on December 22, 2004, Plaintiff submitted updated medical reports to the Appeals Council. *R. at 125-131*. The Appeals Council acknowledged the receipt of this additional evidence and made it part of the record. *R. at 8.* These medical reports, all dated January 21, 2005, include a report from Ricardo A. Nieves, M.D. (Carlsbad Spine, Pain and Sports Medicine) *(R. at 126)* and an x-ray report and initial evaluation from Camille Rivera, M.D. *(R. at 128-131).*

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred at step four of the sequential analysis.  Specifically, Plaintiff asserts that: (1) the ALJ ignored the medical record; (2) the ALJ erred in evaluating Plaintiff's residual functional capacity; (3) the ALJ erred in assessing Plaintiff's credibility; (4) the ALJ failed to develop the record; and (5) the ALJ's questions to the vocational expert did not adequately reflect Plaintiff's limitations.  *See **Memorandum In Support of Plaintiff's Motion to Reverse Administrative Decision Or, in the Alternative, A Remand of This Matter*** (hereinafter "*Memorandum in Support)* (*Doc. 10*). Plaintiff asks for a reversal and an award of benefits. Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

### Medical Record

Plaintiff alleges that the ALJ ignored Plaintiff's medical records and lists a chronology of medical records detailing Plaintiff's complaints of pain. *Memorandum in Support, Doc. 10* at 2.  The Plaintiff also alleges that the ALJ gave more weight to the state agency physicians' opinions than to

the opinion of Plaintiff's treating physician. *Id*. at 3. Finally, Plaintiff alleges that the ALJ substituted her own opinion for that of the medical expert by refusing to find Plaintiff's pain disabling. *Id.* at 3-4. The Court disagrees.

In the decision, the ALJ reviewed Plaintiff's testimony and all the medical records. *R. at 16-18.* The ALJ noted that Plaintiff testified regarding the "constant pain in his low back, hips, feet and legs," and that he has pain when walking or bending. *R. at 16.* The ALJ also noted that Plaintiff had indicated he could not drive more than an hour or lift more than 10 pounds, and thought he would have a hard time concentrating because of the pain. *Id.* The ALJ then listed the relevant medical records beginning with Plaintiff's first visit to Artesia General Hospital on August 18, 2002 for low back pain and continuing through appointments with Dr. Moreno and Dr. Guiterrez. *R. at 16-17.* The ALJ noted that Plaintiff complained of persistent low back pain *(R. at 16);* that x-rays indicated fairly moderate spondylolisthesis of the lumbar sacral area *(id.)*; that Plaintiff's back appeared to improve and he was not on any pain medications at the time he saw Dr. Gutierrez in September of 2002 *(R. at 17)*; that medical diagnoses included lower back pain improvement, spondylolisthesis of the lower lumbar spine, hepatic cyst with etiology unclear and mild liver dysfunction, consistent with alcohol use *(id.)*; that Dr. Guiterrez' consultation indicated conservative non-surgical treatment *(id.)*; that Dr. Moreno's assessment included chronic low back pain, secondary to spondylolisthesis and osteoarthritis and degenerative joint disease *(id.)*;  that Plaintiff indicated to Dr. Moreno that he was unable to afford much more treatment *(id.)*; and that an April 5, 2004 evaluation indicated recurrent lumbar sacral pain, osteoarthritis and degenerative joint disease, and severe blood pressure elevation *(id.)*.  The ALJ did not ignore the medical record, instead she carefully reviewed Plaintiff's medical records and accurately included Plaintiff's complaints.

The findings of state agency physicians are not binding on an ALJ; however, they are considered to be medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(f)(2)(i). The ALJ did not assign more weight to the state agency physicians' opinions than to the opinion of Plaintiff's treating physician. The ALJ specifically stated that "these physicians are non-examining and their opinions do not as a general rule deserve as much weight as those of examining or treating physicians, [however,] these opinions do deserve some weight particularly in a case like this in which there exists a number of other reasons to reach similar conclusions." *R. at 17*. The ALJ notes that the agency physicians opined that Plaintiff could work at the light exertional level and that, although Plaintiff's medical records were sparse, "the progress notes show that [while] claimant may be limited in performing heavy work, they are not inconsistent with an ability to perform lighter work." *Id.* The ALJ also stated that "[t]he record does not contain any opinions from his treating physician that the claimant was disabled or even had limitations greater than those determined in this Decision." *R. at 18*. It is apparent to the Court that the ALJ found that the agency physicians' opinions and the opinions of Plaintiff's treating physician were not inconsistent and that the ALJ did not assign greater weight to the agency physicians' opinions.

Plaintiff also alleges that the ALJ substituted her opinion for that of the medical expert and that "Plaintiff need not necessarily prove that his pain is inevitable or disabling." *Memorandum in Support, Doc. 10 at 4*. The proper framework for the analysis of pain is set out in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), which was followed in *Branum v. Barnhart*, 385 F.3d 1268, 1273 (10th Cir. 2004). An ALJ must consider (1) whether a claimant has established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the

proven impairment and the subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain is disabling. *Branum* at 1273.

In this case, it is undisputed that there is objective medical evidence in the record that establishes that Plaintiff has a pain-producing back impairment and that there is a loose nexus between that impairment and Plaintiff's subjective allegations of pain.  Therefore, the ALJ was required to consider Plaintiff's allegations regarding severe pain and decide whether she believed them. However, "[a] claimant's subjective allegation of pain is not sufficient in itself to establish disability." *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993).  Some of the factors an ALJ should consider, in determining the credibility of pain testimony, include:  the levels of medication and their effectiveness, the extensiveness of the attempts to obtain relief, frequency of medical contacts, the nature of daily activities, subjective measures of credibility peculiarly within the judgment of the ALJ, the motivation and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical evidence. *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991).

The ALJ stated that "[a]lthough the claimant has alleged disabling back problems and his treatment has been sporadic, the absence of more potent treatment modalities are inconsistent with a claim of disabling pain." *R. at 18.*  The ALJ also noted that Plaintiff's visits to Dr. Moreno and Dr. Guiterrez were "relatively sparse" and "that treatment has been essentially routine and/or conservative in nature and the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual." *R. at 18.*  Furthermore, the ALJ concluded that "[t]he record does not contain any opinions from his treating physician that the claimant was disabled or even had limitations greater than those determined in this Decision." *Id.*  During a review of Plaintiff's medical

-12-

history, the ALJ noted that "Dr. Guiterrez indicated the claimant has appeared to improve . . . and was not on any pain medications at that time other than Advil, which was taken intermittently," but later "claimant returned to Dr. Moreno on April 5, 2004 for medications to treat his back and leg pain." *R. at 17.* The ALJ stated that "doing small daily chores at home to help out and taking care of his own personal needs, demonstrates that [claimant] is capable of functioning in his daily living activities as a general rule." *R. at 18.* Plaintiff offered no witnesses to attest to the severity of his pain. Following the above review of the record, the ALJ concluded as follows:

> In summation, there is no evidence of any significant radiculopathy in the claimant's lower extremities reflected in the medical records of Dr. Moreno. There are no neurological deficits shown and the x-ray showed degenerative disc disease in the lumbar spine. Consequently, the undersigned concludes that the claimant's symptoms and functional limitations are not wholly supported by the objective medical evidence and appear to be far in excess of what would be expected from his actual clinical findings.

*R. at 18.*

The Court finds that the ALJ reviewed the required factors in assessing Plaintiff's subjective pain testimony and did not substitute her opinion for that of the medical expert as she properly supported her opinion with evidence from the treating physician's treatment notes in the record. The Court concludes that the ALJ's finding that Plaintiff's allegations of pain are not totally credible or disabling, is supported by substantial evidence in the record.

### Residual Functional Capacity Evaluation

Plaintiff alleges that the ALJ erred in evaluating his residual functional capacity (hereinafter "RFC") because the ALJ failed to include Plaintiff's arthritis, abdominal problems, diarrhea, and pain in the RFC analysis. *Memorandum in Support, Doc. 10* at 4-5. The ALJ found that Plaintiff had the residual functional capacity to perform a restricted range of light work, including:

the residual functional capacity to lift and carry 20 pounds on an occasional basis and 10 pounds on a frequent basis, stand and/or walk for 6 hours in a [sic] 8 hour day with an option to change position between sitting and standing as often as every thirty minutes, push and pull with upper and lower extremities consistent with the lift and carry restrictions previously stated, occasionally climb stairs, stoop, crouch and crawl, and balance and kneel on a frequent basis, in work requiring understanding, remembering and carrying out no more than simple instructions and tasks in an object focused setting in which interaction with the public, coworkers and supervisors is limited to infrequent and superficial bases, and that allows one unscheduled restroom break (in addition to two regularly scheduled breaks in an 8-hour workday).

*R. at 21.*

Plaintiff contends that because the ALJ "ignored [minimized] the effects of pain, she has clearly erred." *Memorandum in Support, Doc. 10* at 5. However, as noted above, the ALJ reviewed the medical records and found that the medical evidence did not support Plaintiff's allegations of <u>disabling</u> pain. *See Qantu v. Barnhart*, 72 Fed. Appx. 807, 811 (10th Cir. 2003) (unpublished) ("it is clear from the ALJ's decision that she accepted that claimant suffered some pain, but found that her pain was not disabling."). "[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any gainful employment." *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir. 1988) (quoting *Brown v. Bowen,* 801 F.2d 361, 362-63 (10th Cir. 1986)). The ALJ addressed Plaintiff's arthritis, stating that the "medical evidence of record does not support a finding that the arthritis in the claimant's spine is manifested by ankylosis or fixation of the dorsolumbar spine at 30 degrees of [sic] more of flexion, as required by Listing 1.04." *R. at 16.* The ALJ also addressed Plaintiff's abdominal problems and diarrhea, specifically including his need for an extra "unscheduled restroom break" *(R. at 150)* in the hypothetical to the VE and tailoring the RFC to include "one unscheduled restroom

break (in addition to two regularly scheduled breaks in an 8-hour workday)." *R. at 21.*   The Court

finds that Plaintiff's allegations that the ALJ erred in evaluating his RFC are without merit.

## Credibility

In challenging the ALJ's credibility finding, Plaintiff asserts that "the ALJ's findings here are,

again, his [sic] own arbitrarily [sic] conclusion with no evidence to support them [findings]."

*Memorandum in Support, Doc. 10* at 5.   Plaintiff also contends that "[i]t is not enough for the ALJ

simply to list the relevant factors, he [sic] must also explain why the specific evidence relevant to each

factor [that] led him [sic] to conclude claimant's subjective complaints were not credible."   *Id.*

In evaluating a claimant's subjective symptoms, an ALJ's findings on credibility "should be

closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).   Thus, the Tenth

Circuit requires an ALJ's credibility finding to be linked to substantial evidence.   *Id.*   However,

"*Kepler* does not require a formalistic factor-by-factor recitation of the evidence;" instead, all that

is required is that the ALJ set forth the specific evidence he relies on in evaluating the claimant's

credibility.   *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).   The Tenth Circuit has also

"emphasized that credibility determinations 'are peculiarly the province of the finder of fact,' and

should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909

(10th Cir. 2001) (quotation omitted).

The ALJ found that Plaintiff's "allegations regarding his limitations are not totally credible for

the reasons set forth in the body of the decision." *R. at 21.*   As noted above, the ALJ did not reject

all of Plaintiff's allegations.   The ALJ acknowledged that Plaintiff had a severe impairment, but after

considering the evidence, concluded that "claimant's alleged symptoms and functional limitations are not wholly supported by the objective medical evidence (Exhibits 1F, 2F, 7F)." *R. at 17.*

Plaintiff did not specify which factors the ALJ failed to consider or support with evidence. The ALJ is not required to make a "formalistic factor-by-factor recitation of the evidence." *Qualls* 206 F.3d at 1372 (10th Cir. 2000). So long as the ALJ sets forth the specific evidence he relied on in evaluating the claimant's credibility, the dictates of *Kepler v. Chater*, 68 F.3d 387 (10th Cir. 1995) are satisfied. *Qualls,* 206 F.3d at 1372. The Court notes that in her decision, the ALJ discussed many factors, such as daily activities, complaints of pain, medications the Plaintiff took to relieve pain and other factors concerning Plaintiff's functional limitations.

Specifically, the ALJ pointed out that Plaintiff was able to engage in "independent living such as doing small daily chores at home to help out and tak[e] care of his own personal needs." *R. at 18.* The ALJ noted that Plaintiff's medical treatment had been sporadic, "essentially routine and/or conservative in nature," and that his treating physician did not indicate that Plaintiff "was disabled or even had limitations greater than those determined in this Decision." *Id.* The ALJ also noted that while Plaintiff stated "his medication caused dizziness, stomach problems and he must be near a bathroom because of bouts of diarrhea" *(R. at 16)*, Dr. Gutierrez indicated that Plaintiff "was not on any pain medications at that time other than Advil, which was taken intermittently." *(R. at 17).*

The ALJ set forth the reasons supporting her negative credibility assessment as required. The Court will not reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991) (quotation omitted). The ALJ's finding that Plaintiff's allegations concerning his symptoms and limitations and his inability to work are not credible, is supported by substantial evidence in the record.

## Development of the Record

Plaintiff argues that the ALJ failed to properly develop the record and "chastises the Plaintiff for having doctors' visits only on a sporadic basis." *Memorandum in Support, Doc. 10 at 5-6.* Plaintiff alleges that he is being punished for not having the financial ability to seek medical attention and that the ALJ should have further developed the medical record. *Id.* at 6.

While a claimant has the burden of demonstrating that he is entitled to benefits, a social security hearing is a nonadversarial proceeding. *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). Therefore, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't. of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993). "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. . . . In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Hawkins v. Chater*, 113 F.3d 1162, 1167-68 (10th Cir. 1997). During the hearing before the ALJ, Plaintiff's counsel did not indicate or suggest to the ALJ that any medical records were missing nor did counsel ask the ALJ for assistance in obtaining additional medical records,;therefore, the ALJ was unaware of a need for further medical examinations.

As to Plaintiff's claims of indigency, there is no evidence that Plaintiff was prescribed treatment that he was unable to afford, that he sought low cost treatment or was denied treatment

because of his financial situation.[13]  The ALJ noted that "[a]lthough the claimant has indicated a lack of treatment due to financial reasons, the undersigned does not find this credible.  There is no indication in the record that the claimant has sought government-subsidized health care or has been turned down from such programs due to financial reasons."  *R. at 18.*  As Defendant noted in the *Response* (*Doc. 11* at 7-8), Plaintiff's claim of indigency is inconsistent with his practice of spending money on alcohol and tobacco.[14]

Although Plaintiff is correct that the ALJ may not summarily discredit him for a lack of treatment when he has a legitimate reason for failing to get additional treatment, such as lack of funds, the determinative factor here is that there is no indication in the record that Plaintiff was diagnosed with a back problem that required extensive evaluation or treatment.  Throughout the opinion, the ALJ noted that Plaintiff's medical records were sparse and sporadic and that treatment was routine and/or conservative in contrast to Plaintiff's allegations of disabling back problems.  The

---

[13]To demonstrate good cause for failure to follow prescribed treatment based upon claimant's inability to afford the treatment, a claimant must document his financial situation and show that clinics and assistance agencies have been contacted in order to prove that no free or subsidized treatment is reasonably available in claimant's local community.  *Social Security Ruling 82-59, *4.*

[14]Plaintiff's medical records indicate he smoked and drank alcohol.  Dr. Guiterrez noted that he "drinks and used to drink heavier . . . [and] also smokes."  *R. at 81.*  Dr. Moreno noted mild liver dysfunction, "consistent with alcohol use" and recommended Plaintiff "abstain from using alcohol."  *R. at 84.  See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) (claimant cannot blame failure to pursue treatment on inability to afford where there is no evidence claimant sought low-cost treatment or was denied medical treatment because of financial condition); *see also Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 477 (6th Cir. 1988) (despite life-threatening condition, claimant would not wear support hose prescribed by physician because of cost, yet he "found it possible to buy two packs of cigarettes a day. . . . "); *Bates v. Barnhart,* 222 F. Supp. 2d 1252, 1260-61 (D. Kan. 2002) ("He states that he cannot afford treatment or medication, yet the ALJ explored his financial resources and found that he had several assets at his disposal.  The record supports a finding that Plaintiff's testimony regarding his assets and his smoking habit is inconsistent with his claim that he cannot afford medical treatment."); *McKenney v. Apfel*, 38 F. Supp. 2d 1249, 1256 (D. Kan. 1999) (claimant did not fill prescriptions citing lack of funds but "[t]here is no indication [claimant] ever tried to apply for aid in order to obtain these prescriptions."); *Jacobs v. Chater*, 956 F. Supp. 1560, 1567-68 (D. Colo. 1997) ("inability to pay for treatment does not necessarily preclude an ALJ from considering the failure to seek medical attention in credibility determinations, especially where the claimant could apparently afford beer and cigarettes.").

Court finds that the paucity of medical documentation is not due to an incomplete record or indigency.

## Hypothetical Questions to the VE

Plaintiff argues that the "ALJ's hypothetical questions did not adequately reflect the Plaintiff's limitations with respect to any new or changed findings resulting from a reassessment of Plaintiff's credibility and RFC as listed above." *Memorandum in Support, Doc. 10* at 6. Because there are no "new or changed findings," the Court construes Plaintiff's argument as an allegation that the ALJ failed to properly state Plaintiff's limitations in the hypothetical questions presented to the VE. However, Plaintiff makes only vague and conclusory allegations and fails to specifically indicate which limitations the ALJ omitted from the hypotheticals.

Hypothetical questions must reflect a claimant's impairments and his limitations as supported by the evidence in the record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Hypothetical inquiries "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater,* 55 F.3d 530, 532 (10th Cir. 1995). "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's [now, Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (internal citation and quotation omitted).

At the hearing, the ALJ presented hypothetical questions to the VE based on the RFC and limitations set forth above. Plaintiff appears to argue that the ALJ's hypothetical questions did not adequately reflect Plaintiff's limitations. However, the Court has rejected Plaintiff's challenges to both the ALJ's RFC assessment and credibility determination. Because the hypothetical questions

posed to the VE included all the limitations that the ALJ included in his RFC assessment, the VE's

answers provided a proper basis for the ALJ's disability decision.

<u>**Use of Unpublished Decisions**</u>

In his *Reply*, Plaintiff alleges that, in her *Response (Doc. 11* at 7), Defendant improperly cited

to an unpublished opinion, *i.e.*, *Hollenbach v. Barnhart*, No. 02-2231, 71 Fed. Appx. 813, 818 (10th

Cir. August 12, 2003) (unpublished).  *Reply, Doc. 12* at 6-7.  The Tenth Circuit rule governing the

use of unpublished opinions provides:

**Rule 36.3. Citation of unpublished opinions/orders and judgments**

**(A) Not Precedent.**  Unpublished orders and judgments of this court are not binding precedents, except under the doctrines of law of the case, res judicata, and collateral estoppel.

**(B) Reference.**  Citation of an unpublished decision is disfavored.  But an unpublished opinion may be cited if:

**(1)** it has persuasive value with respect to a material issue that has not been addressed in a published opinion; and

**(2)** it would assist the court in its disposition.

**(C) Attach Copy.**  A copy of an unpublished decision must be attached to any document that cites it.  If an unpublished decision is cited at oral argument, the citing party must provide a copy to the court and the other parties.

*10th Cir. R. 36.3.*

The Court finds that the Defendant properly cited to the unpublished case by indicating it was

unpublished in the citation and by attaching a copy of the decision to the *Response*.  The Court

recognizes that unpublished opinions are not binding precedents but may have persuasive value and

allows such citations, within the dictates of 10th Cir. R.36.3.  *See United States v. Austin*, 426 F.3d

1266, 1274 (10th Cir. 2005) ("In this circuit, unpublished orders are not binding precedent, except

-20-

under the doctrines of law of the case, res judicata, and collateral estoppel, and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow citation to that decision.") (internal citations omitted).

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's *Motion to Reverse Administrative Decision or, in the Alternative, a Remand of Said Decision* (*Doc. 9*) is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**